******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THE CROSSING CONDOMINIUM ASSOCIATION, INC. *v.* JOSEPHINE S. MILLER ET AL.
## (AC 46334)

# U.S. BANK TRUST, N.A., TRUSTEE *v.* JOSEPHINE S. MILLER ET AL.
## (AC 46586)

Bright, C. J., and Elgo and Cradle, Js.

*Syllabus*

The defendant, in two separate appeals, appealed from the judgment of the trial court denying her motion to open and vacate the judgment of foreclosure rendered for the plaintiff condominium association in connection with a statutory lien (§ 47-258) for unpaid common assessments, and from the judgment of foreclosure by sale rendered by the trial court for the plaintiff bank in a mortgage foreclosure action. The defendant claimed in each appeal, inter alia, that the trial court abused its discretion. *Held*:

The trial court did not abuse its discretion in denying the defendant's motion to open and vacate the judgment of foreclosure by sale in the lien foreclosure action, as an erroneous statement in the court's written orders was a scrivener's error and was not raised or discussed during the lien foreclosure proceeding.

The trial court did not abuse its discretion in ordering a judgment of foreclosure by sale in the mortgage foreclosure action; contrary to the defendant's claim, the sale of the property to the bank in connection with the lien foreclosure action was never approved by the court, as the committee for sale withdrew its motion to approve the sale due to the pendency of the defendant's appeal to this court in the lien foreclosure action.

Argued May 30—officially released October 1, 2024

*Procedural History*

Action, in the first case, to foreclose a statutory lien on certain real property of the named defendant, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the named defendant was defaulted for failure to plead, and action, in the second case, to foreclose a mortgage on certain real property of the named defendant, and for other relief, brought to the Superior Court in the judicial district of

Danbury; thereafter, in the first case, the court, *Shaban, J.*, rendered a judgment of foreclosure by sale and denied the named defendant's motion to open the judgment, and the named defendant appealed to this court; subsequently, in the second case, the court, *Shaban, J.*, granted the plaintiff's motion for summary judgment and rendered a judgment of foreclosure by sale, from which the named defendant appealed to this court. *Affirmed.*

*Josephine S. Miller*, self-represented, the appellant in both appeals (named defendant).

*Jonathan W. Fazzino*, with whom, on the brief, were *Alexander Copp* and *Joshua Pedreira*, for the appellee in Docket No. 46334 (plaintiff).

*Benjamin T. Staskiewicz*, for the appellee in Docket No. 46586 (plaintiff).

*Opinion*

ELGO, J. These related appeals brought by the self-represented defendant, Josephine S. Miller, concern two distinct foreclosure proceedings involving the same real property. In Docket No. AC 46334, the defendant appeals from the judgment of foreclosure by sale rendered by the trial court in favor of The Crossing Condominium Association, Inc. (association), claiming that the court abused its discretion in denying her motion to open and vacate that judgment.[1] In Docket No. AC 46586, the defendant appeals from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, U.S. Bank Trust, N.A., as trustee for LSF9 Master Participation Trust (bank), claiming that the

---

[1] Also named as defendants in the complaint underlying the appeal in AC 46334 were U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, the United States Department of the Treasury–Internal Revenue Service, the Connecticut Department of Revenue Services, and Danbury Hospital. Those parties were defaulted shortly after the action commenced and have not participated in the appeal in AC 46334.

court abused its discretion in so doing.[2] We affirm the judgments of the trial court.

The relevant facts in AC 46334 are largely undisputed. The association is a common interest community; see General Statutes § 47-202 (9); located in Danbury. At all relevant times, the defendant was a member of that common interest community by virtue of her ownership of a unit therein, known as 130 Deer Hill Avenue, Unit 13-B (property). When she failed to pay certain common assessments, the association filed a statutory lien on the property. See, e.g., *Coach Run Condominium, Inc.* v. *Furniss*, 136 Conn. App. 698, 704, 47 A.3d 413 (2012) (condominium associations are authorized to impose statutory liens on units for unpaid assessments "[t]o protect the financial integrity of common interest communities").

In June, 2021, the association brought an action to foreclose on the statutory lien on the property pursuant to General Statutes § 47-258 (lien foreclosure action). On August 10, 2021, the defendant was defaulted due to her failure to plead. See General Statutes § 52-119; Practice Book §§ 10-8 and 17-32. The court thereafter rendered a judgment of foreclosure by sale on September 27, 2021.

On October 14, 2021, the defendant notified the court that she had filed a bankruptcy petition pursuant to chapter 13 of the United States Bankruptcy Code, which resulted in an automatic stay of the lien foreclosure action. After the association obtained relief from that automatic stay, it filed a motion to open the judgment of foreclosure by sale on September 9, 2022. The court

---

[2] The complaint underlying the appeal in AC 46586 also named the Connecticut Department of Revenue Services, Danbury Hospital, the United States Department of the Treasury–Internal Revenue Service, and the association as defendants. Those parties were defaulted after the action commenced and have not participated in the appeal in AC 46586.

held a hearing on the association's motion, in which both parties participated. On November 14, 2022, the court issued an order opening and modifying the foreclosure judgment, finding the total debt and fees to be $25,524 and setting a March 18, 2023 sale date. In that order, the court incorrectly stated that the association was "the holder of the original note and the assignee of the mortgage."[3]

On December 21, 2022, the association filed a notice of judgment, in which it averred that the total debt and fees equaled $27,749. On February 3, 2023, the court issued a supplemental order on the association's motion to open the judgment of foreclosure by sale. Other than adjusting the dates on which the committee could incur expenses, that order was identical to its November 14, 2022 order. Notably, the total debt and fees specified in the February 3, 2023 order remained $25,524—the same figure specified in the court's November 14, 2022 order. A copy of the February 3, 2023 order was furnished to the defendant by the court.

Two days before the scheduled sale date of March 18, 2023, the defendant filed a motion to open and vacate the judgment of foreclosure by sale. The court held a hearing the following day, at which the defendant explained that her motion was predicated (1) on the incorrect statement in the court's November 14, 2022 and February 3, 2023 orders that the association was "the holder of the original note and the assignee of the mortgage" and (2) on the association's failure to provide

---

[3] It is undisputed that, at all relevant times, U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, was the holder of the note and assignee of the mortgage in question. The association's counsel stated at a March 17, 2023 hearing: "[I]t has never been our position, throughout this entire foreclosure process, that we had been the holder of the note, that we are foreclosing on a mortgage on the property. We have always established from the outset that this is a foreclosure to account for unpaid common charges that are due on the property. This is a statutory foreclosure and at no point have we misrepresented that."

her notice of the court's February 3, 2023 order in accordance with the standing orders for foreclosures by sale.

At that time, the court noted that the November 14, 2022 hearing had been conducted remotely and that the association's status as the holder of the note or assignee of the mortgage was never discussed during that hearing. The court acknowledged that the statement in its November 14, 2022 and February 3, 2023 orders that the association was the holder of the original note and the assignee of the mortgage was "incorrect"; see footnote 3 of this opinion; and then stated that it went "back and listen[ed] to . . . a recording of the [November 14, 2022 hearing], and the court never said those words. I think the error came about due to a template that sometimes is used in foreclosure matters and may have been incorrectly rolled into this judgment. . . . [T]o the extent that it may be viewed as a scrivener's error, there's certainly some merit to that . . . . But it's clear that [the transcript reflects] what judgment was actually entered on the day of the hearing before the court." The court then furnished a copy of the transcript of the November 14, 2022 hearing to the parties and took a recess to allow them an opportunity for review.[4]

When the hearing resumed, the defendant and the association's counsel both confirmed that they had reviewed the November 14, 2022 transcript, a copy of which was marked as court exhibit 1. The court noted for the record that, "contrary to [what was] in the [November 14, 2022 and February 3, 2023 orders] where it said the [association] is the holder of the original note and the assignee of the mortgage, [the court] did not say those words at the time of the hearing, as referenced in the transcript." The court then asked the defendant if she took "issue with that at all"; the defendant replied, "No, Your Honor."

---

[4] The November 14, 2022 transcript totals seven pages in length. It contains no reference whatsoever to the holder of the note or the assignee of the mortgage on the property.

The court then posed the following question to the defendant: "[H]ow would proceeding with the sale be prejudicial to you in light of the fact that those words were [included in the November 14, 2022 and February 3, 2023 orders], though at the actual hearing they were never recited?" In response, the defendant stated that the notice of judgment filed by the association on December 21, 2023 "conflicted with what the court ordered."[5] The defendant thus stated that she was confused "in terms of what is the actual amount that would be expected to be paid off prior to a sale going forward. . . . [I]t is not clear to me what the amount of the debt is."

In response, the court noted that the defendant had not raised any such issue in her motion to open. The court further noted the total debt and fees specified in the court's February 3, 2023 order "are the same numbers [and are] consistent with" those specified by the court on November 14, 2022. The court also observed that, at the conclusion of the November 14, 2022 hearing, it specifically asked the defendant if she had any questions or if she believed that the court had overlooked anything, and the defendant had answered in the negative.

The defendant then argued that "[t]here is nothing on the docket sheet to show" that the association had provided her with notice of the court's February 3, 2023 order.[6] In response, the association's counsel stated that the defendant did not raise that notice issue in her

---

[5] We reiterate that, in its December 21, 2022 notice of judgment, the association averred that the total debt and fees equaled $27,749. Despite that averment, the total debt and fees specified in the court's February 3, 2023 order nonetheless remained $25,524—the same figure specified in the court's prior order on November 14, 2022.

[6] The record before us reflects that the court sent a copy of its February 3, 2023 order to the defendant on that date. At oral argument before this court, the defendant was asked if she had received that judicial notice. She answered: "I am pretty sure I did get it."

motion to open. At the conclusion of the hearing, the court asked the defendant what remedy she was seeking. The defendant stated that she was asking the court to "vacate the judgment, correct these errors, and set a new sale date."

By order dated March 17, 2023, the court denied the defendant's motion to open the judgment of foreclosure by sale. In that order, the court stated in relevant part: "Practice Book § 17-4 vests discretion in the trial court to determine whether there is a good and compelling reason to modify or vacate its judgment. . . . No good or compelling reason has been provided to the court which would lead it to the conclusion that the judgment should be reopened. . . . [A]t the November 14, 2022 hearing, the court specifically inquired of each counsel including the defendant as to whether the court had overlooked any aspect of the consideration of the [association's] motion to reset the law days and the court's findings. Each party, including the defendant, replied that they were not aware of anything being overlooked. . . . Further, the error complained of by the defendant as to the wording of the judgment which referenced that the [association] was the holder of the original note and assignee of the mortgage was a scrivener's error. To vacate the judgment on that basis would elevate form over substance, especially given that the defendant was present at the time the judgment was placed on the record and heard it recited as set forth in the transcript of that proceeding filed with the court during the present hearing. The court acknowledges the error in the written notice issued in that the [association] was the condominium association seeking to foreclose on the property due to delinquent common charges. However, the error was harmless as it did not affect the findings as to the fair market value of the property, the debt and expenses found, and the date of

the sale. . . . [W]hether or not the language was present, the terms of the judgment would have been the same.

"Lastly, the court notes that the defendant suffers no prejudice from the denial of the motion in that, because the Unites States is a party, a sale of the property is mandated by law. To cancel the sale and order another sale would only increase the costs and expenses incurred by defendant should she ultimately elect to redeem. This would be to her financial detriment. At the hearing on the present motion, the defendant indicated, in part, the judgment should be opened because it was unclear from the notice issued what the actual debt was. This is unavailing as the defendant was present when the debt was found by the court and announced as part of its judgment. Moreover, her argument rings hollow at this point in time as there was no evidence presented at the hearing on her motion that she had ever inquired of the [association] since the date of the judgment as to what the outstanding debt was with respect to possible redemption of the property and payment of the outstanding balance." (Citations omitted.)

I

In AC 46334, the defendant claims that the court abused its discretion by denying her motion to open and vacate the judgment of foreclosure by sale in the lien foreclosure action. We do not agree.

"The standard of review of [a denial of a motion to open] a judgment of foreclosure by sale . . . is whether the trial court abused its discretion." (Internal quotation marks omitted.) *Milford* v. *Recycling, Inc.,* 213 Conn. App. 306, 309, 278 A.3d 1119, cert. denied, 345 Conn. 906, 282 A.3d 981 (2022). "A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of

the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Owen*, 88 Conn. App. 806, 811–12, 873 A.2d 1003, cert. denied, 275 Conn. 902, 882 A.2d 670 (2005).

Our review of the record convinces us that the court was well within its discretion to deny the defendant's motion to open. A review of the record—and the transcripts of the November 14, 2022 and March 17, 2023 hearings in particular—demonstrates that the erroneous statement contained in the court's November 14, 2022 and February 3, 2023 written orders regarding the holder of the note and assignee of the mortgage was the result of a scrivener's error, as that issue was neither raised nor discussed at any time during this statutory lien foreclosure proceeding. Moreover, the defendant at all times was aware that the association was pursuing that action in its capacity as a common interest community to recover common assessments due to it, as the complaint plainly indicates.

Equally unavailing is the defendant's contention that the plaintiff failed to comply with the court's standing orders by failing to provide her notice of the court's February 3, 2023 order modifying the foreclosure judgment. To be sure, those standing orders, available on the Judicial Branch website, require notice by certified mail of the entry of a judgment of foreclosure by sale "to all *nonappearing* defendant owners of the equity . . . ." (Emphasis added.) Uniform Standing Orders for Foreclosure by Sale, Form JD-CV-79. See Official Court

Webforms, Form JD-CV-79, available at https:// www.jud.ct.gov/webforms/forms/CV079.pdf (last visited September 25, 2024). That notice provision has no application in the present case, as the defendant appeared and actively participated in the lien foreclosure action. Furthermore, it is undisputed that the defendant received a copy of the February 3, 2023 order in question via judicial notice, as she confirmed at oral argument before this court. See footnote 6 of this opinion. For those reasons, we conclude that the court did not abuse its discretion in denying the defendant's motion to open and vacate the judgment of foreclosure by sale in the lien foreclosure action.

II

In AC 46586, the defendant claims that the court abused its discretion by rendering a judgment of foreclosure by sale in a separate foreclosure action. We disagree.

The following additional facts are relevant to that claim. Approximately two months after the association commenced the lien foreclosure action that is the subject of the appeal in AC 46334, the bank commenced this action to foreclose on a promissory note secured by a mortgage deed on the property (mortgage foreclosure action). The defendant filed an appearance on October 5, 2021. On October 14, 2021, the defendant filed a notice that she had filed a bankruptcy petition pursuant to chapter 13 of the United States Bankruptcy Code, which resulted in an automatic stay of the mortgage foreclosure action. On May 5, 2022, the bank filed a notice that it had obtained relief from that automatic stay.

The defendant filed her answer and special defenses on May 19, 2022. Approximately four months later, the bank moved for summary judgment. Following a hearing at which the defendant failed to appear, the court

granted the bank's motion for summary judgment on January 23, 2023.[7]

On Friday, March 17, 2023, the court in the lien foreclosure action denied the defendant's motion to open and vacate the judgment of foreclosure by sale. Unbeknownst to the bank, the defendant filed an appeal of that judgment with this court at 4:48 p.m. that Friday—nineteen hours before the foreclosure sale in the lien foreclosure action was scheduled to occur. As a result, that foreclosure sale went forward on Saturday, March 18, 2023, and the bank was the high bidder. Although the committee for sale initially sought approval of the sale, it filed a motion to withdraw that request on April 5, 2023, which the court granted.

While the defendant's appeal in the lien foreclosure action was pending, the bank filed a motion for a judgment of strict foreclosure in the mortgage foreclosure action on April 27, 2023. In the weeks that followed, the bank filed copies of the note and mortgage documents, a notice of EMAP compliance as required by General Statutes § 8-265ee (a), an appraisal of the property, an affidavit of debt, a foreclosure worksheet, and affidavits of attorney's fees with the court. By order dated May 31, 2023, the court rendered a judgment of foreclosure

---

[7] In rendering summary judgment in favor of the bank, the court stated in relevant part: "[T]he court has listened to the argument of counsel for the [bank] and reviewed the materials offered in support of the motion for summary judgment. The court finds that the [bank] has established that there remains no genuine issue of material fact with respect to liability and that the special defenses raised by the defendant are insufficient to defeat the claims of the [bank]. . . . Lastly, the court notes that the defendant is a self-represented party and as such is granted greater leeway by the courts even though she is a practicing attorney who is familiar with court procedures as evidenced by the special defenses and pleadings she has filed in response to the [mortgage] foreclosure action. Nonetheless, she has failed to file any responsive pleading to rebut the allegations and submissions of evidence offered by the [bank]. The [bank] has established that there is no genuine issue of material fact as to her liability for the debt and for the cause of action seeking reformation of the mortgage."

by sale and set a sale date of September 16, 2023.[8] From that judgment, the defendant now appeals.

On appeal, the defendant contends that the court improperly rendered a judgment of foreclosure by sale in the mortgage foreclosure action. That claim also is governed by the abuse of discretion standard of review. As our Supreme Court has explained, "[a] foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Angle*, 284 Conn. 322, 326, 933 A.2d 1143 (2007); see also *Deutsche Bank Trust Co. Americas* v. *DeGennaro*, 149 Conn. App. 784, 793, 89 A.3d 969 (2014) ("[t]he standard of review of a judgment of foreclosure by sale or by strict foreclosure is whether the trial court abused its discretion" (internal quotation marks omitted)).

Where a foreclosure defendant's liability has been established by summary judgment, as is the case here, "all that remains for the court to determine at the judgment hearing is the amount of the debt and the terms of the judgment." *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 186, 73 A.3d 742 (2013). Following the filing of the bank's motion for a judgment of foreclosure and related documentation, the defendant did nothing in response, such as objecting to the evidence of debt submitted by the bank. The record indicates that the

---

[8] The court found the fair market value of the property to be $319,000 and the outstanding debt to be $420,245.87.

defendant's last filing with the court in the mortgage foreclosure action was a motion for an extension of time "to conduct discovery" filed on December 28, 2022—more than five months prior to the court's decision to render a judgment of foreclosure by sale.

The defendant nonetheless argues that the court abused its discretion because the property "had already been sold" to the bank at the March 18, 2023 foreclosure sale in the lien foreclosure action. She overlooks the fact that her timely filing of an appeal in the lien foreclosure action hours prior to that foreclosure sale rendered that purported sale void, as an appellate stay automatically applied to those proceedings. See Practice Book § 61-11. For that reason, the sale that transpired on March 18, 2023 was never approved by the court, as the committee for sale withdrew its motion to approve the sale due to the pendency of the defendant's appeal. In light of the foregoing, we conclude that the court did not abuse its discretion in ordering a judgment of foreclosure by sale in the mortgage foreclosure action.

The judgments are affirmed and the cases are remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.